UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Let Them Play MN, Jane Doe 1, both individually and as parent and guardian of Jane Doe 2 and John Roe 1, minors, Jane Doe 3, as parent and guardian of John Roe 2 and Jane Doe 4, minors, Jane Doe 5, and John Roe 3, as parent and guardian of John Roe 4, a minor.<br><br>        Plaintiffs,<br><br>vs.<br><br>Governor Tim Walz, in his official capacity, Attorney General Keith Ellison, in his official capacity, Commissioner Jan Malcolm, in her official capacity, Minnesota Department of Health, Commissioner Alice Roberts-Davis, in her official capacity, and Minnesota Department of Administration,<br><br>        Defendants. | Case No. 0:20-cv-2505-JRT-HB<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' 28 U.S.C. § 455 MOTION** |

## INTRODUCTION

Three Judges in this District have recused themselves from presiding over this case. Regrettably, Plaintiffs suggest that another recusal from this Court is warranted because the Court's spouse (the "Spouse") apparently has financial and other interests that may be implicated by this matter, including through her financial and professional interest as owner and Chief Executive Officer of her public affairs firm (the "Firm"), as well as her long standing professional and political relationships with Defendant Governor Tim Walz and his administration, including other Defendants.

1

Canon 3(C) of the Code of Conduct for United States Judges offers, as a paradigmatic example of the type of conflict requiring recusal, a financial or other interest by a spouse of the presiding judge in the subject matter or outcome of a proceeding. Accordingly, Plaintiffs respectfully seek relief pursuant to 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(4) based on: (1) the Spouse's apparent responsibility for (and personal endorsement of) Governor Walz's selection of Commissioner Tarek Tomes—a material witness in this action as a result of his role coordinating Defendants' youth sports guidance and communications and negotiating with youth sports' organizations related to the current executive order at issue in this action; (2) the Firm's contractual relationship with Defendants to provide assistance with communications related to Defendants' Executive Orders and the 2019 novel coronavirus ("COVID-19" or "COVID")—subjects at the core of this action; (3) other business relationships between the Firm and other Defendants in this action; (4) the Firm's pursuit of new business opportunities with Defendants and other government agencies by advertising its current and/or former relationships with several of Defendants; and (5) the Spouse's political contributions to Governor Walz's reelection campaign in the 2019-2020 election cycle. For the reasons set forth below, Plaintiffs believe recusal is warranted.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Governor Walz is a Defendant in this case because his exercise of peacetime emergency powers—particularly through Executive Order 20-99 (the "Order")—has unconstitutionally discriminated against youth sports and the Order (through the MDA's refusal to issue a permit to protest his Order) violated Plaintiffs' First Amendment rights.

2

Plaintiffs are an organization advocating on behalf of youth athletes and individual coaches prevented by Governor Walz's Order from organizing in protest and playing youth sports. Plaintiffs filed an expedited motion for preliminary injunction and for expedited discovery on Saturday, December 12, 2020. (ECF 9-12.) After three previous judicial assignments resulted in recusals by other judges in this District, the parties were informed of the current judicial assignment in this case on Monday, December 14. (ECF 14.) Plaintiffs' counsel subsequently identified the information and evidence set forth in this motion.

In 2018, after a visible failure of the Minnesota Licensing and Registration System software development project,[1] Governor Walz issued Executive Order 19-02 to establish a "Blue Ribbon Council on Information Technology" (hereinafter, the "Blue Ribbon Council"). (Diehl Decl. Ex. 2; Minn. Exec. Order No. 19-02.) Simultaneously with the establishment of the Blue Ribbon Council, "Governor Walz . . . asked [Spouse] the Chief Executive Officer of [the Firm], to convene an interview panel of private and public sector IT experts to screen candidates for the appointment of the" Commissioner of Minnesota IT ("MNIT") Services. (Diehl Decl. Exs. 2, 3 p.3.)

As described in the Blue Ribbon Council's June 2020 Report:

In the early days of the Walz administration, the state had some challenges with IT applications. To be fair, these issues were carried over from previous administrations, but this governor wanted them resolved. To do so, he first kicked off an exhaustive search for a new state CIO. Under the leadership of [Spouse], the state assembled a search committee, including many of the

---

[1] This issue was reported in the media and was the subject of a February 2019 report of the State of Minnesota's Office of the Legislative Auditor. (Declaration of Samuel W. Diehl ("Diehl Decl.") Ex. 1.)

3

state's private and public IT leaders. The extensive search led to the hiring of Tarek Tomes as state CIO and Commissioner of MNIT.

(*Id*. Ex. 3 p. 3.) Spouse personally endorsed Tomes, stating he "'brings technical experience and competence, but also a management style that you need in this very challenging role' . . . ." (*Id*. Ex. 4.) After conclusion of Spouse's work selecting Commissioner Tarek Tomes on behalf of Governor Walz, Spouse donated the maximum allowable—$2,000 for the 2019-20 Election Cycle—to Governor Walz's reelection campaign. (*Id*. Exs. 5-6.)

Spouse is co-founder, Chief Executive Officer ("CEO"), and, upon information and belief, sole or majority owner of the Firm.[2] In March 2020, Spouse's Firm was awarded a contract to promote Governor Walz's exercise of peacetime emergency powers in response to COVID-19. (Diehl Decl. Exs. 7-9.) As described by the Firm:

> [The Firm] had the opportunity to partner with the State of Minnesota and the office of Governor Walz and Lt. Governor Flanagan on the launch of the #StayHomeMN campaign, highlighting the importance of social distancing to slow the spread of COVID-19. . . .
>
> The campaign was a success, ending with nearly 200 million impressions of the #StayHomeMN hashtag on Twitter, 12,000+ organic mentions on Instagram, a placement in the Star Tribune and excellent influencer participation from local foodies to coaches and athletes from Minnesota sports teams.

(*Id*. Ex. 9.)

---

[2] According to a December 2003 interview, in the fall of 2003 Spouse purchased the Firm again after selling it in 2001. (Diehl Decl. Ex. 17.) The Firm's filings with the Minnesota Secretary of State show that the "Registered Office and/or Agent" were changed on January 5, 2004, and Spouse remains listed with Minnesota's Secretary of State as both the Firm's Registered Agent and Chief Executive Officer. (*Id*. Ex. 18.) The Firm seeks to obtain government contracts as a "Woman-Owned Small Business," apparently resulting from Spouse's ownership or majority ownership. (*Id*. Ex. 10.)

4

Governor Walz similarly described the Firm's work in a May 2020 PowerPoint presentation, stating:

- The first phase of the campaign, "#StayHomeMN," focused most specifically on one simple goal for Minnesotans: stay home whenever possible.

\*\*\*

- The Governor's office later partnered with [the Firm], a local public relations firm, to increase the engagement of local influencers to ensure the public health messaging was saturating social media.

(*Id*. Ex. 8.)[3]

Since receiving that contract, and possibly others, the Firm has worked to gain additional contracts with the State of Minnesota, as well as federal and local government contracts, including stating that:

[The Firm's] experience includes strategic communication consulting for The State of Minnesota, including the Minnesota Department of Revenue, Minnesota Department of Health, Hennepin County, Ramsey County and Minnesota Department of Natural Resources. In addition, [the Firm] has provided public relations and public messaging campaigns for the two largest Minnesota county governments, nearly a dozen other agencies and several leading grant-making foundations and NGOs.

(*Id*. Ex. 10; *see also id*. Ex. 11.) Today, the Firm's official Twitter account continues to

---

[3] In May 2020, the Firm published a summary of "key steps an organization can and should take to be on offense when communicating during a crisis." (Diehl Decl. Ex. 19.) Next to a picture of Governor Walz speaking at a podium, the Firm's guidance provides, among other information relevant to this action:

- "Be forthright and clear in all communications. If you don't know something at the time…say so."
- "Don't sugar coat or mislead in any way"
- "One of the worst things an organization can do in its communications is to hide the facts or sugar coat a crisis." (*Id*.)

Plaintiffs have concerns related to Governor Walz. It will be probative to Plaintiffs' claims to discover whether or what advice the Firm provided to Defendants as part of its contract related to COVID/Executive Order communications.

5

advertise Governor Walz's "Stay Safe MN" logo as its Twitter account picture:



(*Id*. Ex. 12 (partial view of Firm's Twitter account front page).)

Meanwhile, in May 2020, after Governor Walz banned youth sports for the first time, he turned to Spouse's choice for Commissioner of MNIT, Tarek Tomes, to coordinate his administration's communications with sports organizations and to advise him on restarting youth sports. (*Id.* Ex. 13.) Commissioner Tomes continues in this role today. (*Id*. Exs. 14-15; Complaint Ex. B at pp. 3-4; *see also* https://www.youtube.com/watch?v=lk_pLgoQuaU (including, *e.g.*, at 15:15-15:37 ("I think we want to instill as much confidence as we can in health officials. And certainly, when I talk to the Governor, I always share with him—as many or all of you may know he's a former football coach, he's a teacher—so he gets this world . . .").) As a result, commissioner Tomes is a witness who will be relevant in this case.

Commissioner Tomes, selected for Governor Walz's administration by Spouse, will be a deponent and, likely, a witness at trial. Accordingly, the credibility and qualification of Commissioner Tomes are highly relevant to this Court's later decisions on matters currently before it and matters likely to come before it.

**DISCUSSION**

Under 28 U.S.C. § 455(a), any judge is required to "disqualify" themselves from any matter where their "impartiality might reasonably be questioned." "The use of the word 'might' in the statute 'clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify himself in a questionable case.'" *United States v. Singer*, 575 F. Supp. 63, 67 (D. Minn. 1983) (quoting *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980)). In contrast, recusal under 28 U.S.C. § 455(b)(4) is mandatory and a judge "shall . . .disqualify himself" when the judge knows "his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(4).

Because the goal of Section 455 is to foster the public appearance of impartiality, disqualification may be required even when there is no actual bias or prejudice. *See, e.g.*, *Potashnick*, 609 F.2d at 1111; *Singer*, 575 F. Supp. at 67. In *United States v. United Health Group, Inc.*, the Central District of California considered a situation where:

> The Court's spouse owned six shares of United Health Group, Inc., (UnitedHealth Grp Inc./UNH) from September 28, 2018, to May 20, 2019. The ownership of the shares was unknown to both the Court and the Court's spouse; upon discovery of the ownership, the shares were sold.

*United States v. United Health Grp., Inc.*, No. CV 16-8697 MWF (SSX), 2019 WL 2353124, at *1 (C.D. Cal. May 31, 2019). Despite a maximum value in the Court's spouse's portfolio of less than $1,800, the court found.

> Because the shares were sold upon discovery of the ownership, disqualification would in most cases not be necessary . . . However,

7

> avoidance of disqualification is not available if "the interest could be substantially affected by the outcome" of the case. *Id*. Moreover, the divestment could also give rise to an appearance of impropriety under § 455(a). Advisory Opinion No. 69.
>
> Advisory Opinion No. 69 further clarifies that the "[t]he key inquiry is not the size of the interest, but the size of the impact on the interest." In other words, the sale of the six shares does not prevent disqualification because the Court would have to be certain that the outcome of this qui tam action could never affect the price of UNH by even a penny.

*Id*.[4] As another federal court similarly found, "[a] financial interest "however small" of a judge or a judge's spouse is generally grounds for disqualification, 28 U.S.C. § 455(b)(4), and it is not waivable." *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist*., 665 F. Supp. 873, 874 (D. Or. 1987).

In the case at bar, regardless of whether Spouse and her Firm drafted any of the specific communications about which Plaintiffs take issue in their Complaint and briefing, Spouse and her Firm worked on Defendants' communication plan related to Executive Orders and COVID and both Defendants (apparently to bolster the credibility of their communication plan) and the Firm (apparently seeking to market based on their previous work and obtain new State and federal work) continue to reference their joint work publicly today. (Diehl Decl. Exs. 7-12.) Spouse and the Firm's professional reputation and business will be affected by more than one penny based on how and whether Court reviews Plaintiff's equal protection concerns demonstrated in large part by Defendants' public

---

[4] From September 28, 2018, to May 20, 2019, six shares of UnitedHealth Group Inc. stock ranged from a total value of $1,727.64 at its peak (Dec. 4, 2018) to its lowest total value of $1,248.42 (Apr. 4, 2019). *See* https://finance.yahoo.com/quote/UNH/history?period1=1538092800&period2=1558310400&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true

8

communications related to COVID and the Order. (*See, e.g.*, Plaintiffs Memorandum, ECF 10, pp. 11-15; Complaint at ¶¶59-82.)

Plaintiffs respectfully request that the Court recuse itself from the case at bar because of the potential appearance of partiality and appearance of Spouse's financial interests in the litigation. Plaintiffs respectfully bring this concern regarding a personal association with the Defendants in the case at bar to the Court's attention because the association brings a reasonable question of the appearance of the presiding judge's impartiality in this case. A reasonable person would harbor doubts about a judge's ability to remain impartial in a case where the judge's spouse has been responsible for promoting the Defendant's exercise of emergency powers, including specifically promoting a past executive order which also banned youth sports, was responsible for leading the effort to select a Commissioner responsible for advising the Defendant on the matter at issue before this court, and who has donated to the campaign of the Defendant.

Because of the appearance of impropriety and conflict, and the financial consequences for Spouse related to the subject matter and consequences of this litigation, Plaintiffs respectfully request the current presiding judge to recuse himself from the instant case.

## **CONCLUSION**

The public perception of a fair and impartial judicial system would be enhanced by the Court's recusal in the case at bar. In compliance with Section 455, Plaintiff respectfully requests that the presiding judge disqualify himself from the instant case due to the appearance of impartiality and Spouse's financial interest in the subject matter of this

9

action and in Defendants that could be substantially affected by the outcome of the proceeding.

Dated: December 15, 2020

**CROSSCASTLE, P.A.**

By:   <u>s/ Samuel W. Diehl</u>
    Samuel W. Diehl (#388371)
    Ryan D. Wilson (#400797)
    333 Washington Avenue N.
    Ste 300-9078
    Minneapolis, MN 55401
    P: (612) 412-4175
    F: (612) 234-4766
    Email: <u>sam.diehl@crosscastle.com</u>
           <u>ryan.wilson@crosscastle.com</u>

**ATTORNEYS FOR PLAINTIFFS**